## STATE v. JOSEPH J. HOFMANN.[1]

June 20, 1930.

No. 27,973.

*Joseph Cleary,* for appellant.

*Henry N. Benson, Attorney General,* and *Floyd B. Olson,* County Attorney, for the state.

TAYLOR, C.

The defendant was convicted of having committed an assault in the first degree upon policeman Peter M. Uglem in the city of Minneapolis on the evening of February 23, 1929. His motion for a new trial was denied and he appealed.

The grocery store of Arthur A. Ortman is located on Washington avenue in the city of Minneapolis between First avenue north and Second avenue north. Third street parallel with Washington avenue extends along the other side of the block. An alley passing the rear of the store extends from First avenue north to Second avenue

[1]Reported in 231 N. W. 411.

north. On the evening of February 23, 1929, Ortman closed his store and went home about six o'clock. Shortly thereafter officer Uglem saw Harold Jewett, in a Dodge roadster without a front license plate and with a part of the figures on the rear license plate missing, drive up the alley, stop at the rear of the store and sound the horn. Uglem went up to the car and while he was questioning Jewett a man whom he recognized as the defendant came out of the back door of the store and ordered him to "stick 'em up" and shot at him. This man ran to the car, jumped in, and they started off. Uglem shouted at them to stop and when they did not fired several shots at them. The car stopped. Jewett was found slumped over the wheel fatally wounded. The other man had disappeared in the darkness. Officer Bungert, who was some two blocks away, heard the shooting but took it to be the back-firing of an automobile. Someone notified him of the shooting, and he ran to the spot. The officers examined the store. They found the back door open, that a desk had been tampered with, and that the money drawer had been pulled out and was empty. Bungert using the telephone in the store called Ortman, then called police headquarters for the gun squad, and later called for the ambulance. Jewett was taken to the hospital. A loaded revolver was found in his pocket and another in a pocket of the car. A supply of shells was also found in the car. The officers began a search for defendant and arrested him a few minutes before 12 o'clock that night. Some small change similar to that which Ortman had left in the money drawer was found in an outside pocket of his overcoat.

The principal question presented is whether the evidence justified the jury in finding that the defendant is the man who shot at Uglem.

Uglem knew the defendant, having seen him several times previously. He had a flashlight which he turned on the man who came out of the store and recognized him as the defendant. Uglem identifies him positively. It was admitted by defendant that he wore a gray cap and a gray overcoat that day. The witness Tronk was the night man in charge of a garage located at the corner of

Second avenue north and Third street in the same block. He heard
the shooting and went outside looking at a clock at the front door
as he did so. He saw a man in a gray overcoat run out of the
alley, cross Second avenue north, run down that avenue to Third
street, and then turn onto Third street and disappear behind a
building. He gives the time as between 6:12 and 6:15. Uglem
gives the time that the car entered the alley as 6:15 and the time
of the shooting as a few minutes later. Bungert thought that he
heard the shooting about 6:15 or 6:20, and that he called head-
quarters within 20 or 25 minutes thereafter. The call was received
at headquarters at 6:34. The evidence in support of defendant's
alibi made the question of time important.

Defendant's mother worked in the Lincoln Bank building eve-
nings cleaning and scrubbing on the sixth and seventh floors, and
defendant usually assisted her in this work. He assisted her on
the evening in question. The time at which he arrived at the bank
building is not fixed with certainty as the witnesses did not know
the time definitely and could give only their opinion. He went to
the sixth floor in the elevator in which were three employes of an
electric company who came to the building for the purpose of mak-
ing some repairs. They place the time as 6:30 or thereabouts, and
this is probably the most reliable estimate. A police officer who
went to the Ortman store looking for fingerprints testified that he
went from the store to the bank building in 8½ minutes; that he
walked rapidly but did not run. The evidence would permit the
jury to find that the defendant could be at the Ortman store at
the time of the shooting, and could also be at the bank building at
the time he was seen at that building, and is sufficient to sustain
their verdict.

Defendant had no revolver at the time he was arrested and testi-
fied that he had never had a revolver. On March 20, 1929, a revolver
containing five shells was found near the alley leading from Third
street in the block where the man seen by the witness Tronk had
disappeared. A pawnbroker identified this revolver by the numbers
on it as one sold by him in December, 1928. A box of shells found

in the possession of Jewett was also identified by the pawnbroker as sold at the same time. He kept a record of all sales of firearms, and each purchaser was required to sign this record. The purchaser of this revolver signed the name "Frank Jordan" on this record. A handwriting expert who had had many years' experience in testing questioned writings compared this signature with admittedly genuine signatures and writings of defendant and testified unequivocally that this signature was written by the same person who wrote the others. Defendant objected to all this evidence on the ground that no foundation was laid for it, and also urges here that the record containing the signature "Frank Jordan" was not offered in evidence. There was some confusion in the designation of the exhibits, but page 78 of the settled case clearly shows that this record was received in evidence. We find sufficient foundation for all the evidence objected to on that ground.

Defendant urges as error the refusal of the court to strike out the testimony of the witness Tronk on the ground that he did not recognize and could not identify the man he saw running from the vicinity of the shooting. This claim is too obviously without merit to be considered.

Defendant also criticizes the charge, but we find nothing in it of which he has any cause to complain. It submitted the case to the jury clearly and correctly.

Defendant also moved for a new trial on the ground of newly discovered evidence. Several affidavits were submitted. In one it is shown that the pawnbroker made a report to the police department of the sale of the revolver to "Frank Jordan," and that the description of the purchaser as given therein is not an accurate description of the defendant as given in an affidavit by himself. In another the affiant states that he was in Ortman's store between 6:20 and 6:25 on the evening of the shooting and that Ortman had not closed up at that time. In another the affiant states that he heard shooting in the direction of Ortman's store between 6:30 and 6:45 on that evening. Both of them simply make the bald statement without showing that they had any means of knowing or

fixing the time. The foregoing is all there is of substance in any of the affidavits. It is wholly insufficient as ground for a new trial. State v. Wheat, 166 Minn. 300, 207 N. W. 623; State v. Skogman, 171 Minn. 515, 213 N. W. 923; 5 Dunnell, Minn. Dig. (2 ed.) §§ 7125, 7128, 7129, 7130, 7131.

Defendant assigns as error that the court imposed upon him an indeterminate sentence instead of a sentence for a definite term, but does not argue this question. Before the sentence was imposed an information was filed charging that he had been previously convicted of the crime of grand larceny in the second degree. He admitted the previous conviction. The statute (G. S. 1923, § 9931, as amended, 2 Mason, 1927, id.) provides that in such cases the imprisonment shall be under an indeterminate sentence.

We find nothing which would justify a reversal, and the order is affirmed.